**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ARTOSS, INC.,                                    )
                                                 )
                    Plaintiff,                   )
                                                 )
        v.                                       )        C. A. No. 20-741-RGA-MPT
                                                 )
ARTOSS GmbH, THOMAS GERBER,                      )
and WALTER GERIKE,                               )
                                                 )
                    Defendants.                  )

**<u>REPORT AND RECOMMENDATION</u>**

**I.      INTRODUCTION**

On June 1, 2020, Artoss, Inc. ("Artoss US") filed a nine-count Complaint against

Artoss GmbH ("Artoss Germany"), Thomas Gerber ("Gerber"), and Walter Gerike

("Gerike") alleging:  Breach of Distributor Agreement--Artoss Germany (Count I); Breach

of Duty of Good Faith and Fair Dealing--Artoss Germany (Count II); Anticipatory

Repudiation of Distributor Agreement--Artoss Germany (Count III); Breach of Note # 2--

Artoss Germany (Count IV); Breach of Note #3--Artoss Germany (Count V); Breach of

Note #4--Artoss Germany (Count VI); Breach of Note #5--Artoss Germany (Count VII);

Breach of Fiduciary Duty--Gerber (Count VIII), and Breach of Fiduciary Duty--Gerike

(Count IX).[1]

On September 10, 2020, Gerber and Gerike (collectively, "defendants") filed a

Motion to Dismiss Counts VIII and IX pursuant to FEDERAL RULE OF CIVIL PROCEDURE

12(b)(6) ("Motion").[2]  For the reasons discussed below, it is recommended that

defendants' Motion be denied.

---

[1] D.I. 1 (Complaint).  On August 12, 2020, Artoss US filed a Notice of Partial Voluntary
Dismissal with Prejudice Counts IV, V, VI, and VII against Artoss Germany.  D.I. 12.
[2] D.I. 13.

## II.    BACKGROUND

### A.    Parties

Artoss US is a corporation organized under the laws of the state of Delaware, with its principal place of business in St. Cloud, Minnesota.[3]  Artoss Germany is a corporation organized under the laws of Germany, with its principal place of business in Rostock, Germany.[4]  Gerber and Gerike are citizens and residents of Germany and the primary owners of Artoss Germany.[5]

### B.    Facts

Artoss Germany owns various patented bone grafting technologies and materials it has sold in the dental market since 2005.[6]  In December 2012, Gerber and Gerike met James Cassidy ("Cassidy") and Paul Byerley ("Byerley") in New York City and over the next two years discussed expanding Artoss Germany's presence in the United States.[7]  The four eventually agreed to form Artoss US to serve as the North American distributor of specific Artoss Germany bone grafting products.[8]  Cassidy and Byerley formed Artoss US in March 2015 and, consistent with prior agreements, Cassidy, Byerley, Gerber, and Gerike each received a twenty-five percent ownership stake in the company and became its four directors.[9]

#### 1.    The Distributor Agreement

---

[3] D.I. 1 ¶ 1.
[4] *Id.* at ¶ 2.
[5] *Id.* at ¶¶ 3-4, 9.
[6] *Id.* at ¶¶ 8, 10.
[7] *Id.* at ¶¶ 12, 14.  Byerley was an experienced leader of startup and early stage companies and had a background in sales and distribution of biologic and medical devices.  *Id.* at ¶ 13.  Cassidy likewise had extensive experience in the medical device industry with a focus on product development.  *Id.*
[8] *Id.* at ¶¶ 16-21.
[9] *Id.* at ¶¶ 21-23.

2

Effective April 1, 2015, Artoss Germany and Artoss US executed a Distributor Agreement that granted Artoss US exclusive authority to market and sell Artoss Germany's NanoBone® bone grafting products in North America.[10]

### a.    Article 6.2

Pursuant to Article 6.2 of the Distributor Agreement, Artoss Germany "agree[d] to consign product" to Artoss US.[11]  Artoss US "agree[d] to pay Artoss [Germany] for product sold within 10 working days after the end of the month in which [Artoss US] receive[d] payment."[12]  On March 14, 2018, Artoss Germany and Artoss US agreed to amend Article 6.2 as follows:

> 6.2.    Consignment.  Artoss [Germany] agrees to consign product to Distributor (Artoss [US]).  Distributor agrees to pay Artoss [Germany] for product sold within 10 working days after the end of the month in which Distributor ~~receives payment~~ **recognizes the sale.  Sales recognition is determined by the later of the dates on which Distributor receives (1) a charge sheet from the seller and (2) a purchase order from the health care facility.**[13]

### b.    Article 7.1

Article 7.1 of the Distributor Agreement states:  "[t]he terms and provisions [of the Distributor Agreement] and no others will govern all orders and purchases notwithstanding any inconsistent or additional terms on purchase orders or forms, which will have no force or effect whatsoever as between the parties[.]"[14]  Article 7.1 further states:  "[a]ll purchase orders will be subject to [Artoss Germany's] acceptance."[15]

---

[10] D.I. 1-1, Ex. A (Distributor Agreement) at 1; D.I. 1-1, Ex. A, App. A (Product); D.I. 1-1, Ex. A, App. B (Authorized Market and Territory).

[11] D.I. 1-1, Ex. A at 3.

[12] *Id.*

[13] **D.I. 1-1, Ex. I at 1 (strikethrough and emphasis in original).**

[14] D.I. 1-1, Ex. A at 3.

[15] *Id.*

c.    **Article 7.2**

Article 7.2 of the Distributor Agreement recites:  "[p]roducts will be shipped to [Artoss US] as soon as practical in the normal course of [Artoss Germany's] business following its acceptance of a purchase order."[16]

### 2.    Artoss US Advances Payments to Artoss Germany

Artoss US asserts that starting in October 2015, it began advancing funds to Artoss Germany to assist with development and operating costs.[17]  On October 29, 2015, Artoss US and Artoss Germany entered into "Amendment #1 to Distribution Agreement dated April 1, 2015" ("Amendment #1").[18]  Artoss US contends Amendment #1 granted Artoss US exclusive rights to distribute Artoss Germany's NanoBone® Synthetic Bone Graft Putty 2.0 ("SBX Putty") in North America.[19]  In exchange, Artoss US maintains it agreed to pay for certain product development costs with respect to SBX Putty.[20]  Artoss US asserts that between October 29, 2015, and January 29, 2016, it paid Artoss Germany a total of $170,575.95 to fund product development costs associated with SBX Putty.[21]  Artoss US also claims it loaned significant funds to Artoss Germany through at least five different promissory notes between April 2016 and June 2017, and that Artoss Germany failed to repay any portion of several of the notes.[22]  Artoss US also advanced payments to Artoss Germany for various research and development expenses related to NanoBone® products from 2017 to 2019.[23]

---

[16] *Id.*
[17] D.I. 1 ¶ 31.
[18] D.I. 1-1, Ex. B at 1.
[19] D.I. 1 ¶ 34.
[20] *Id.* at ¶¶ 33-34.
[21] *Id.* at ¶ 35.
[22] *Id.* at ¶¶ 40-67.
[23] *Id.* at ¶¶ 70-75.

4

### 3.   Alleged Use of Confidential Information Against Artoss US's Interests

Artoss US alleges Gerber and Gerike used confidential information, including confidential budget projections, obtained as directors of Artoss US against its financial interests.[24]  For example, Artoss US asserts that in late 2018, Artoss Germany began sending correspondence to Artoss US demanding an increase in the price of its NanoBone® products, and further demanding additional changes to the terms of the Distributor Agreement.[25]

Artoss US maintains throughout its entire business arrangement with Artoss Germany, it only paid Artoss Germany *after* Artoss US "sold product to its downstream customer, consistent with Article 6.2 of the Distributor Agreement."[26]  Nevertheless, Artoss US asserts that at a January 2019 Board of Directors meeting, Gerber and Gerike proposed, and then voted in favor of:  (1) Artoss US paying higher prices for Artoss Germany products; and (2) Artoss US making payments Net 30 days rather than after completion of a sale, in contradiction with Article 6.2 of the Distributor Agreement.[27]  Both proposals ultimately failed via a two-to-two vote.[28]  Artoss US further asserts that in March 2020, Gerike wrote to Cassidy "demand[ing] that Artoss US begin paying Artoss Germany within 60 days of receiving product, *regardless of whether and/or when the product was actually sold* by Artoss US."[29]  In the same writing, Gerike allegedly stated Artoss US owed Artoss Germany $1,153,267.48 for unsold inventory in Artoss US's

---

[24] *Id.* at ¶ 94.
[25] *Id.* at ¶ 81.
[26] *Id.* at ¶ 86.  Artoss US maintains that although Artoss Germany occasionally included the phrase "Conditions of payment 60 days net" or "Conditions of payment 60 Tage netto" in invoices, the parties continued to abide by Article 6.2.  *Id.* at 1 ¶¶ 87-88.
[27] *Id.* at ¶¶ 95-96, 98.
[28] *Id.* at ¶ 98.
[29] *Id.* at ¶ 90 (emphasis added).

possession, claiming $843,038.61 was owed and immediately due.[30]  Artoss US denies having any unpaid obligations at that time.[31]

Later in March 2020, Gerber resigned from the Board of Directors of Artoss US.[32] In May 2020, Artoss US placed a purchase order for 300 units of Artoss Germany products.[33]  Gerike responded on behalf of Artoss Germany indicating it would only deliver the products upon receipt of payment in advance.[34]  Artoss US maintained if Artoss Germany refused to supply products to Artoss US, it would quickly run out of inventory, "result[ing] in loss of customers, loss of market share, damage to goodwill, and other irreparable harm [to Artoss US]."[35]

### 4.   Alleged Breaches of Fiduciary Duty

Artoss US alleges the actions of Gerber and Gerike caused Artoss Germany to breach the Distributor Agreement and were "designed to improperly advance their personal interests and the interests of Artoss Germany at the expense of Artoss US" in breach of their fiduciary duties to Artoss US and its shareholders.[36]

Counts VIII and IX allege that as directors and shareholders of Artoss US, Gerber and Gerike were bound by fiduciary duties of care and loyalty,[37] however, they breached those duties "by . . . failing to act in a disinterested and independent manner, in good faith, with an honest belief that [their] actions were in the best interests of Artoss US and its stockholders."[38]  Specifically, defendants:

---

[30] *Id.*
[31] *Id.* at ¶ 91.
[32] *Id.* at ¶ 92.
[33] *Id.* at ¶ 101.
[34] *Id.* at ¶¶ 102-03.
[35] *Id.* at ¶ 101.
[36] *Id.* at ¶¶ 106-109, 162-63, 167-68.
[37] *Id.* at ¶¶ 162, 167.
[38] *Id.* at ¶¶ 163, 168.

6

[P]laced [their] own interests and the interests of Artoss Germany ahead of the interests of Artoss US by . . . advocating for Artoss Germany's interests in Artoss US board meetings; causing Artoss Germany to demand performance by Artoss US that goes beyond, and is contrary to, the express terms of the Distributor Agreement; using confidential information of Artoss US to negotiate against Artoss US's interests; and even causing Artoss Germany to breach the Distributor Agreement in a manner that jeopardizes the market share, goodwill, and the very existence of Artoss US.[39]

## III.   GOVERNING LAW

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) governs a motion to dismiss a complaint for failure to state a claim upon which relief can be granted.  The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case.[40]  AThe issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.@[41]  A motion to dismiss may be granted only if, after Aaccepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief.@[42]  While the court draws all reasonable factual inferences in the light most favorable to a plaintiff, it rejects unsupported allegations, Abald assertions,@ and Alegal conclusions.@[43]

To survive a motion to dismiss, a plaintiff's factual allegations must be sufficient

---

[39] *Id.* at ¶¶ 164, 169.

[40] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[41] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (A[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court=s assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.@).

[42] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *Burlington*, 114 F.3d at 1420).

[43] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (citations omitted) (rejecting unsupported conclusions and unwarranted inferences); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) (AIt is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged.@).

to Araise a right to relief above the speculative level . . . .@[44]  Plaintiffs are therefore
required to provide the grounds of their entitlement to relief beyond mere labels and
conclusions.[45]  Although heightened fact pleading is not required, Aenough facts to state
a claim to relief that is plausible on its face@ must be alleged.[46]  A claim has facial
plausibility when a plaintiff pleads factual content sufficient for the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged.[47]  Once
stated adequately, a claim may be supported by showing any set of facts consistent
with the allegations in the complaint.[48]  Courts generally consider only the allegations
contained in the complaint, exhibits attached to the complaint, and matters of public
record when reviewing a motion to dismiss.[49]

## IV.   DISCUSSION

Counts VIII and IV allege Gerber and Gerike breached their fiduciary duties of
care and loyalty as directors of Artoss US.[50]  On September 10, 2020, defendants filed

---

[44] *Twombly*, 550 U.S. at 555 (citations omitted); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

[45] *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[46] *Twombly*, 550 U.S. at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (AIn its general discussion, the Supreme Court explained that the concept of a showing requires only notice of a claim and its grounds, and distinguished such a showing from a pleader=s bare averment that he wants relief and is entitled to it.@) (quoting *Twombly*, 550 U.S. at 555 n.3).

[47] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[48] *Twombly*, 550 U.S. at 563 (citations omitted).

[49] See, e.g., *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

[50] D.I. 1 ¶¶ 164, 169.  Although Artoss US alleges defendants breached their duties of care, the parties almost exclusively dispute duty of loyalty issues.  *Id.* at ¶¶ 161-70; D.I. 14; D.I. 18; D.I. 20.  Nevertheless, defendants argue an exculpatory clause in Artoss US's certificate of incorporation shields defendants from duty of care liability.  D.I. 14 at 7 n.2; 8 *Del. C.* § 102(b)(7).  An exculpatory clause is generally asserted as an affirmative defense, not the basis for a Rule 12(b)6) motion to dismiss.  *See Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F. Supp. 2d 538, 560-61 (D. Del. 2008) (explaining defendants may invoke exculpatory provisions as affirmative defenses against duty of care claims, but such affirmative defenses generally do not serve as the basis to dismiss under Rule 12(b)(6)).  Moreover, Artoss US pleads sufficient facts to support its claim that defendants breached their duty of loyalty (discussed below), thus, it is unnecessary to discuss the effect of the exculpatory clause

8

their Motion to dismiss those claims pursuant to Rule 12(b)(6).[51]

The duty of care requires directors to inform themselves "prior to making a business decision, of all material information reasonably available to them."[52]  The duty of loyalty prohibits "directors [from] us[ing] their position of trust and confidence to further their private interests."[53]

### A.    Artoss Germany's Alleged Breach of the Distributor Agreement

Defendants allegedly breached their fiduciary duties to Artoss US by (1) "causing Artoss Germany to demand performance by Artoss US that [went] beyond, and [was] contrary to, the express terms of the Distributor Agreement"; and (2) "causing Artoss Germany to breach the Distributor Agreement in a manner that jeopardizes the market share, goodwill, and the very existence of Artoss US."[54]

Even if accepted as true, defendants contend those actions cannot support breach of fiduciary duty claims that are entirely dependent on them "causing" Artoss Germany to breach the Distributor Agreement.[55]  Count I of the Complaint alleges Artoss Germany breached the Distributor Agreement.[56]  Defendants argue the breach of fiduciary duty claims must be dismissed as duplicative of the breach of contract claim

---

for the purposes of defendants' Motion.  *See In re Cornerstone Therapeutics Inc, Stockholder Litig.*, 115 A.3d 1173, 1186-87 (Del. 2015) (finding exculpatory clauses may not be considered for Rule 12(b)(6) purposes when a complaint sufficiently "pleads facts creating an inference that [directors] . . . may have breached their duty of loyalty").
[51] D.I. 13.
[52] *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).
[53] *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. Ch. 1939).  In doing so, a director must "affirmatively . . . protect the interests of the corporation committed to his charge, but also . . . refrain from doing anything that would work injury to the corporation."  *Id.*
[54] D.I. 1 ¶¶ 164, 169; D.I. 14 at 8.
[55] D.I. 14 at 8.
[56] D.I. 1 ¶¶ 112-121.

against Artoss Germany.[57]  Defendants also argue if Artoss US has any rights to specific product prices or terms, those rights arise from the Distributor Agreement rather than fiduciary duty principles.[58]  Finally, defendants cite Delaware cases disallowing assertion of a separate breach of fiduciary claim based on defendant directors causing a breach of contract.[59]

Artoss US maintains its fiduciary duty claims are not duplicative of the breach of contract claim against Artoss Germany because defendants were not parties to the Distributor Agreement and owed no personal obligations thereunder.[60]  It also notes the Distributor Agreement did not require defendants to "refrain from negotiating deals and/or causing contracts to be executed in a way that promotes their own interests at the expense of Artoss US," or "maintain the confidentiality of Artoss US's proprietary information."[61]  Therefore, defendants' fiduciary duties "[arose] solely" from their status as directors of Artoss US.[62]  Even if its breach of contract claim against Artoss Germany is unsuccessful, Artoss US contends it could still prevail on its breach of fiduciary duty claims against defendants by showing they "assisted a third-party [such as Artoss

---

[57] D.I. 14 at 8-10.  Defendants also note Artoss US's breach of contract claim against Artoss Germany and its breach of fiduciary duty claims against defendants allege the "same amorphous harms," i.e., loss of market share, goodwill, and the viability of Artoss US's business.  *Id.* at 10.

[58] D.I. 14 at 9.  Defendants contend their alleged "demands" for increased prices and changes to payment terms were not "inherently wrongful."  Those actions could only potentially be wrongful due to the existence of the Distributor Agreement, rather than a breach of their fiduciary duties.  *Id.*

[59] *Id.* at 10 (citing *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010); *Grayson v. Imagination Station, Inc.*, No. CIV.A. 5051-CC, 2010 WL 3221951, at *7-8 (Del. Ch. Aug. 16, 2010); *Blue Chip Capital Fund II Ltd. P'ship v. Tubergen*, 906 A.2d 827, 833-34 (Del. Ch. 2006)).

[60] D.I. 18 at 4.

[61] *Id.* at 5.

[62] *Id.*

Germany] to the detriment of Artoss US[.]"[63]

In *Nemec v. Shrader*,[64] the Delaware Supreme Court emphasized the:

[W]ell-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim.  In that specific context, any fiduciary claims arising out of the      same facts that underlie the contract obligations would be foreclosed as   superfluous.[65]

In *Grayson v. Imagination Station, Inc.*,[66] the Delaware Court of Chancery

clarified that when breach of contract and breach of fiduciary duty claims arise from the

same or similar conduct:

The relevant inquiry then is whether the obligation sought to be enforced arises from the parties' contractual relationship or from a fiduciary duty owed to the shareholders.  If the obligation to be enforced arises from a fiduciary duty owed   to the shareholders, then the count is not duplicative and will not be dismissed.[67]

Other Court of Chancery cases explain that to avoid being duplicative, additional

facts must exist that provide "an independent basis for the fiduciary duty claims apart

from the contractual claims."[68]  Therefore, defendants' Motion should be denied if Artoss

US sufficiently alleges facts that create an independent basis for the fiduciary claims.  In

other words, the obligations Artoss US seek to enforce must arise from the defendants'

fiduciary duties rather than the Distributor Agreement itself.

---

[63] *Id.*
[64] 991 A.2d 1120.
[65] *Id.* at 1129.
[66] 2010 WL 3221951.
[67] *Id.* at *7.
[68] *PT China LLC v. PT Korea LLC*, No. CIV.A. 4456-VCN, 2010 WL 761145, at *7 (Del. Ch. Feb. 26, 2010) (refusing to dismiss fiduciary duty claims because of facts independent of the breach of contract claims, including director defendant allegedly usurping business opportunities from the company, misappropriating company resources, and disclosing confidential business information to a secret competing company that defendant owned); *see also Schuss v. Penfield Partners, L.P.*, No. CIV.A. 3132-VCP, 2008 WL 2433842, at * 10-11 (Del. Ch. June 13, 2008) (denying defendants' motion to dismiss fiduciary duty claims as duplicative because they "depend[ed] on additional facts . . . [that were] broader in scope, and involve[d] different considerations in terms of a potential remedy").

The cases defendants rely upon which dismissed fiduciary duty claims as duplicative of breach of contract claims are distinguishable.[69]  In *Grayson*, the court dismissed a breach of fiduciary duty claim because the defendant was a party to the voting agreement contract at issue, and the defendant's obligations "arose solely from the [voting agreement] and not from any fiduciary duty independently owed to the shareholders in general."[70]  In *Nemec*, the relevant contract was a stock rights plan under which a company, through its board of directors, maintained the right to redeem retired officers' shares of company stock at book value.[71]  In finding the fiduciary duty claims against the defendant directors for causing the company to redeem retired officers' shares were duplicative, the court explained the obligations the plaintiffs sought to enforce were "expressly addressed by contract."[72]  Although the directors were not individual parties to the stock rights plan, the court noted:  "[e]ven though the Directors caused the Company to redeem the plaintiffs' shares . . . the fiduciary duty claim still arises from a dispute relating to the exercise of a *contractual* right."[73]

Here, Artoss US pleads sufficient facts suggesting its breach of fiduciary duty claims against defendants are not duplicative of its breach of contract claim against Artoss Germany.  Standing alone, Artoss US's allegations that defendants breached their fiduciary duties to Artoss US by "causing Artoss Germany to breach the Distributor Agreement" and "causing Artoss Germany to demand performance by Artoss US" in contravention of the Distributor Agreement could be categorized as duplicative.[74]  These

---

[69] D.I. 14 at 9-11; D.I. 18 at 9-10.
[70] *Grayson*, 2010 WL 3221951, at *7.
[71] *Nemec*, 991 A.2d at 1123.
[72] *Id.* at 1129.
[73] *Id.* at 1129 (emphasis in original).
[74] D.I. 1 ¶¶ 164, 169.

two allegations, however, do not stand alone in Artoss US's Complaint.[75]  Rather, Artoss

US pleads additional facts that form an independent basis for its fiduciary duty claims.

The Complaint also alleges defendants "placed [their] own interests and the interests of

Artoss Germany ahead of the interests of Artoss US," "us[ed] confidential information of

Artoss US to negotiate against Artoss US's interests," and "advocat[ed] for Artoss

Germany's interests in Artoss US board meetings."[76]  These additional alleged wrongful

acts do not arise from the Distributor Agreement.

      Further, it is possible for Artoss US to prevail on its fiduciary duty claims against

defendants even if its breach of contract claim against Artoss Germany is unsuccessful.

For example, under Article 7.1 of the Distributor Agreement, "[a]ll purchase orders [are]

subject to [Artoss Germany's] acceptance."[77]  Thus, it is unclear whether Artoss

Germany breached the Distributor Agreement by refusing to supply products to Artoss

US in March 2020.  In this context, even if Artoss Germany did not breach the

Distributor Agreement, it is possible defendants breached their duties of loyalty by

utilizing Artoss US's "confidential budget projections" to advance defendants' own

interests against Artoss US's best interests.[78]

      Thus, the court finds the breach of fiduciary duty claims against defendants are

not duplicative of the breach of contract claim against Artoss Germany and denies

defendants' motion to dismiss on this issue.

### B.    Defendants' Alleged Use of Confidential Information to Negotiate Against Artoss US and Advocate for Artoss Germany's Interests

      Defendants next argue that "advocating for Artoss Germany's interests in

---

[75] *Id.*

[76] *Id.*

[77] D.I. 1-1, Ex. A at 3.

[78] D.I. 1 ¶ 94.

Artoss US board meetings" does not amount a breach of fiduciary duty.[79]  Defendants

contend Artoss US's allegation that they "us[ed] confidential information of Artoss US to

negotiate against Artoss US's interests" simply amounts to unsuccessful advocacy, not

an actionable breach of fiduciary duty.[80]

Artoss US argues defendants' actions were "successful in causing very real and

substantial harm to Artoss US."[81]  Artoss US asserts defendants successfully

"advocated for, and caused Artoss Germany to demand more onerous pricing and

payment terms from Artoss US, and to withhold shipment of goods to Artoss US without

prepayment," and also successfully disclosed Artoss US's confidential pricing

information to Artoss Germany.[82]  Artoss US maintains "this entire litigation has been

necessitated because Gerber and Gerike were successful in causing Artoss Germany

to make demands for prepayment . . . which have caused Artoss US to experience very

real damages" such as product shortages and litigation costs.[83]

The two Court of Chancery opinions upon which defendants rely are again

distinguishable.  In *Jeter v. RevolutionWear, Inc.,*[84] a company alleged several breaches

of fiduciary duty by the defendant director.[85]  The company alleged that in order to

benefit himself, the defendant caused the company to change its product and marketing

strategy and demanded it to halt a particular branding strategy, resulting in "the waste of

significant [company] funds, time, and effort. . . ."[86]  The court dismissed the claims,

---

[79] D.I. 14 at 11.
[80] *Id.* at 11-12.
[81] D.I. 18 at 11.
[82] *Id.* at 11-12.
[83] *Id.* at 12.
[84] *No. CV 11706-VCG, 2016 WL 3947951 (Del. Ch. July 19, 2016).*
[85] *Id.* at *12.
[86] *Id.* at *13.

concluding that the defendant's "advocacy of changes to the [c]ompany's marketing strategy" did not amount to a breach of fiduciary duty.[87]  The court noted the company failed to allege how the defendant was able to "unilaterally alter the direction of the [c]ompany."[88]  The company also alleged the defendant tried to capitalize on its financial suffering by attempting to purchase additional shares of company stock and install an outside consultant to run the company.[89]  In dismissing these claims, the court indicated there were insufficient facts to establish fiduciary claims, especially because the defendant's attempts to gain control of the company were unsuccessful:  "the ultimate culmination of [the defendant's] alleged plan . . . simply never occurred."[90]

In *Lewis v. Straetz*,[91] plaintiff shareholders brought breach of fiduciary claims against directors for rejecting a tender offer.[92]  As applicable to the present case, the court found that one of the directors did not breach any fiduciary duties by issuing a press release stating "in his view [the tender offer was] completely unacceptable."[93]  The court explained the plaintiffs failed to allege the director had "the authority or power to unilaterally accept or reject a proposal on [the company's] behalf[,]" or that the director "controlled or dominated" the company's board of directors.[94]

Here, Gerber and Gerike's proposed changes to pricing and payment terms at the January 2019 Artoss US board meeting—which ultimately failed via a two-to-two vote—are analogous to the above facts of *Jeter* and are relevant to the issues

---

[87] *Id.* at *13-14.  The court also noted the company's allegations seemed to "converge" with its breach of contract claims.  *Id.* at *14.
[88] *Id.* at *14.
[89] *Id.*
[90] *Id.* at *15.
[91] No. CIV.A. 7859, 1986 WL 2252 (Del. Ch. Feb. 12, 1986).
[92] *Id.* at *1.
[93] *Id.* at *5.
[94] *Id.*

15

addressed in *Lewis*.  Therefore, without more, defendants may be correct that Artoss

US fails to state a fiduciary duty claim by alleging their actions demonstrate they

"advocat[ed] for Artoss Germany's interests in Artoss US board meetings."[95]  However,

Artoss US also alleges defendants "us[ed] confidential information of Artoss US to

negotiate against Artoss US's interests."[96]  Even if defendants were justified in

advocating for changes to pricing and payment terms in board meetings, a plausible

breach of the fiduciary duty of loyalty is stated by alleging they utilized Artoss US's

"confidential budget projections" against Artoss US's best interests.[97]  This conclusion is

bolstered by defendants' alleged refusal to supply products to Artoss US in March

2020.[98]

The court, therefore, finds the Complaint sufficiently pleads a breach of fiduciary

duty claim against each defendant.

## V.   CONCLUSION

For the foregoing reasons, it is recommended that defendants' motion to dismiss

(D.I. 13) be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1)(b) and (C), Fed. R. Civ. P. 72(b), and D. DEL.

LR 72.1, any objections to this Report and Recommendation shall be filed within

fourteen (14) days limited to ten (10) pages after being served with the same. Any

response shall be limited to ten (10) pages and filed within fourteen (14) days thereafter.

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for

---

[95] D.I. 1 ¶¶ 164, 169; D.I. 14 at 11-14.
[96] D.I. 1 ¶¶ 164, 169.  Neither *Jeter* nor *Lewis* specifically addresses the misuse of confidential information in the fiduciary duty context.  *See generally Jeter*, 2016 WL 3947951; *Lewis*, 1986 WL 2252.
[97] D.I. 1 ¶ 94.
[98] *Id.* at ¶ 118.

Objections Filed under Fed. R. Civ. P. 72 dated October 9, 2013, a copy of which is

found on the Court's website (www.ded.uscourts.gov).


Dated:  February 23, 2021          /s/ Mary Pat Thynge
                                   Chief U.S. Magistrate Judge